## GREAT WESTERN FUEL CO., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11904. Promulgated September 9, 1927.

The right to lease certain haulage ways *held* to have been of no value on March 1, 1913.

*Samuel E. Marshall, Esq.*, for the petitioner.
*A. G. Bouchard, Esq.*, for the respondent.

This is an appeal from the determination by respondent of deficiencies aggregating $1,276.59 in income and profits taxes for the calendar years 1920, 1921, and 1922. It is alleged that respondent erred in refusing to allow any value for certain haulage ways and haulage-way agreements and to permit a deduction for the exhaustion thereof.

### FINDINGS OF FACT.

Petitioner is a Colorado corporation with principal offices in Denver.

On June 1, 1905, petitioner leased from the Inland Realty Co. certain coal lands situated in Huerfano County, Colorado, for a term of 20 years upon a royalty basis. On June 1, 1920, the lease was canceled, and a new lease for 10 years upon substantially the same basis was made, granting the use of the haulage ways or tunnels on the leased premises for the removal of coal produced from adjoining lands, free of charge for the first 5 years and at the rate of 2 cents per ton for all such coal removed in the last 5 years of the term.

Some time prior to 1914 the petitioner conveyed its property to S. E. Marshall, in trust to secure a bond issue of $60,000, and on January 1, 1914, said trustee was in possession of the property as a mortgagee in possession.

Previous to the taxable years petitioner sublet for mining operations the above-described parcel of land to the Oakdale Coal Co., which owned a plant of 1,000 tons per day capacity, with railroad connections, situated on property adjoining petitioner's premises on the south and east. The Occidental Coal Mine, a 240-acre tract adjoining petitioner's mine on the north and west, was leased, by owners having no interest in the premises leased to petitioner, to the Oakdale Coal Co. for a term of years ending December 31, 1930. The amount of recoverable coal and the physical characteristics of the Occidental property made it impracticable to mine it independently of the operations of the Oakdale Co., with its developed workings and plant. Petitioner's land and that of the Occidental Mine are a part of a small coal basin known as the La Veta Basin,

the extent of which is determined by the outcroppings of coal on the west and north, by the developed coal on the east and south, and by a vertical vein, the result of some geological disturbance, on the west, beyond which there is no recoverable coal.

By agreement dated January 1, 1914, petitioner granted to the Oakdale Co. the right to transport any coal produced from the Occidental Mine through the underground workings on petitioner's land for a term of 10 years, in consideration of the payment of 7 cents for every ton of coal produced from the Occidental Mine, whether transported or removed through petitioner's mine workings or not. On July 25, 1921, said agreement was canceled and a new agreement, upon substantially the same terms and conditions, was entered into for a term ending December 31, 1930, which provided that from and after August 1, 1921, the Oakdale Co. would pay to petitioner 4 cents per ton on all coal produced from the Occidental Mine, whether transported or removed through petitioner's workings or not. There was no cost of acquisition of said way-leave agreements, no stock was issued therefor, nor were they otherwise paid into the invested capital of petitioner.

In 1910 and 1911, the estimated recoverable coal, including the vertical vein on the west, in the Occidental property was a minimum of 750,000 tons and the estimated coal now remaining to be mined is 30,000 tons. Previous to August 1, 1921, the Oakdale Co. paid to petitioner 7 cents per ton on all coal mined from the Occidental property, and since August 1, 1921, has paid to petitioner 4 cents per ton on all coal so mined. All the coal mined from such property has been removed through the mine workings or haulage ways on petitioner's property. The coal actually mined by the Oakdale Co. from the Occidental property, and the fees paid to petitioner or S. E. Marshall, trustee, from 1912 to 1925, inclusive, are:

| Year | Tons mined | Amount way-leave paid |
|------|-----------:|----------------------:|
| 1912 | 40, 977. 85 | $2, 868. 45 |
| 1913 (January and February) | 12, 324. 73 | 862. 74 |
| 1913 (March to December) | 30, 913. 68 | 2, 163. 96 |
| 1914 | 45, 453. 49 | 3, 181. 70 |
| 1915 | 19, 444. 25 | 1, 577. 36 |
| 1916 | 25, 434. 26 | 2, 078. 26 |
| 1917 | 93, 459. 49 | 6, 039. 32 |
| 1918 | 126, 053. 45 | 8, 823. 69 |
| 1919 | 74, 638. 62 | 5, 224. 68 |
| 1920 | 98, 706. 77 | 6, 909. 43 |
| 1921 | 69, 276. 66 | 4, 068. 51 |
| 1922 | 67, 808. 91 | 2, 712. 33 |
| 1923 | 48, 262. 45 | 1, 930. 48 |
| 1924 | 77, 085. 92 | 3, 083. 43 |
| 1925 | 42, 466. 76 | 1, 697. 66 |
| | 819, 004. 71 | 49, 490. 81 |

No coal was mined from petitioner's property during the taxable years. The only recoverable coal remaining on petitioner's property at that time was in the pillars protecting the underground workings and passage ways. The only revenue received by petitioner from its mine during the taxable years was the haulage-way fees paid to it by the Oakdale Co.

## OPINION.

VAN FOSSAN: The sole question in this case is the March 1, 1913, value of a certain lease of coal lands. More specifically the question may be narrowed to the value on said date of the right of petitioner to lease its haulage ways for the transportation of coal mined on an adjoining property. A brief review of the facts is necessary to an understanding of the situation.

Petitioner, lessee of certain coal lands under an agreement dated June 1, 1905, and expiring in 20 years, had constructed certain haulage ways through its property. Adjacent to petitioner's land were certain coal lands known as the Occidental Mines. By reason of the small body of coal in the Occidental Mine and certain conditions existing, it was deemed economical by the lessee of the Occidental Mine to haul some of its coal through the underground workings and over the haulage ways of petitioner's property. There is certain evidence in the record from which it may be inferred that previous to January 1, 1914, the haulage ways had been used under an informal agreement and payment in some amount made therefor. On January 1, 1914, Oakdale Coal Co., lessee of the Occidental Mine, entered into a haulage-way agreement with petitioner, by the terms of which they agreed to pay petitioner a fee of 7 cents per ton for all coal mined in the Occidental Mine whether hauled through petitioner's property or not. By agreement dated July 25, 1920, a new haulage agreement, expiring December 31, 1930, was made providing for a payment of 4 cents per ton for all coal mined on the Occidental property whether hauled through petitioner's property or not. Under these agreements various sums were paid annually, amounting in the taxable years 1919, 1920, and 1921 to $6,909.43, $4,068.51, and $2,712.33, respectively. Under this state of facts, petitioner claims that its lease of the coal property from which no coal was mined in the taxable years had a value arising from the haulage-way rights amounting to $48,500 on March 1, 1913, which should be exhausted pro rata over the term of the lease or proportionately as the coal in the adjoining property became exhausted.

Petitioner concedes that as physical properties the haulage ways have no value. The sole value of the lease contended for arises from

11340°—28——4

the alleged economic necessity or convenience which made it desirable for the lessee of the adjoining property to haul its coal through petitioner's workings.

The successive Revenue Acts have recognized the principle that before subjecting the income from property to a tax, the owner should be allowed a certain deduction to reimburse him for the exhaustion or depletion of the capital employed. That leases and contracts may be exhaustible assets is not questioned. To establish exhaustion of any capital asset acquired prior to March 1, 1913, however, it is necessary to prove the value of the asset on said date, or if acquired thereafter, its cost. The first way-leave agreement was dated January 1, 1914. There was no cost of acquisition. The haulage contract itself, therefore, does not fall within the category of assets permitting exhaustion, and the question before us becomes whether or not the right to make the haulage contract under petitioner's lease had on March 1, 1913, the alleged or any other capital value.

What was the nature of this right and what its characteristics? It is predicated entirely on the economical convenience above mentioned and the expectation that the owner or lessee of the Occidental Mine would embrace this convenience. Prior to January 1, 1914, this realization was inchoate and contingent on many different factors. There was no assurance of the making of any haulage-way agreement. The fact that a previous lessee of the Occidental Mine had found it uneconomical to provide his own outlet did not preclude the possibility of some later lessee solving the problem involved. That such a contingency was in the minds of the parties is evidenced by the provisions of the contract of January 1, 1914, which states that " It is the intention of the Oakdale Company to transport *some or all* of the coal mined under said proposed lease through the underground workings " of petitioner's property. It is further shown by the provisions that Oakdale Coal Co. should pay the agreed haulage fee for all coal mined on its property " whether transported through the lands of the party of the first part or not." Such provisions clearly recognized the possibility that the coal might be extracted from the Occidental Mine without use of petitioner's haulage ways, in which event, no income would have accrued from this source. If prior to March 1, 1913, the Oakdale Coal Co. had abandoned the Occidental operations, as a previous lessee had done, and on said date the property had been lying idle, what value could be said to attach to the mere right to make a haulage-way agreement on March 1, 1913. Faced by such conditions and uncertainties, what value can we now say we would have placed on the right on the basic date?

But assuming that the haulage-way rights subsequent to March 1, 1913, proved to be valuable, let us consider that petitioner offers to

demonstrate their value on the basic date. He submits proof that the adjoining land contained a minimum of 750,000 tons of recoverable coal in 1910 and 1911. The witness, however, did not indicate the amount removed by operations between said years and March 1, 1913. Thus we have no figure on which to base a computation were such attempted. The witness further states that the coal in the Occidental property had a value of 7 cents per ton for a haulage way, but on March 1, 1913, the haulage agreement had not been entered into and we have no evidence of any assurance that the same would be subsequently made. The haulage-way agreement of July 25, 1920, which reduced the fee to 4 cents, demonstrates that the figure of 7 cents quoted by the witness was found to be excessive.

Petitioner relies further on the record of revenues actually received under the haulage-way agreement of January 1, 1914, as proving the value on March 1, 1913, of the rights.

But the haulage-way contract was acquired at no cost to petitioner; it provided no minimum amount of coal to be mined; it was not an assured source of income in any amount, nor was the income received in one year a criterion for gauging the succeeding year. The mere fact that in retrospect we find that a piece of property or a contract has, over a given period, earned a certain income, standing alone, falls short of proof that prior to the beginning of the period the owner of the property had an exhaustible asset whose value should be measured by the income subsequently received.

The proof submitted by petitioner of the value on March 1, 1913, of the right to make a haulage contract is unconvincing and insufficient. We find no error in the determination of the respondent and his finding is approved.

*Judgment will be entered for the respondent.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.